**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Robert AQUINO, Defendant–Appellant.**

**United States of America,**
**Plaintiff–Appellee,**

v.

**Gary Aquino, Defendant–Appellant.**

**Nos. 99–10501, 99–10606.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 15, 2000

Filed March 8, 2001

Sarah Courageous, Sarah Courageous, A Law Corporation, Honolulu, Hawaii, for defendant-appellant Gary Aquino.

Elizabeth A. Fisher, Honolulu, Hawaii, for defendant-appellant Robert Aquino.

Ronald G. Johnson, Assistant United States Attorney, Honolulu, Hawaii, for the plaintiff-appellee.

Before: HUG, TROTT, and WARDLAW, Circuit Judges.

WARDLAW, Circuit Judge:

Gary Aquino appeals his conviction, and Robert Aquino appeals his conviction and sentence, following guilty pleas to charges of conspiracy to possess with intent to distribute methamphetamine, possession with intent to distribute methamphetamine, and carrying a firearm during a drug trafficking offense under 21 U.S.C. §§ 846, 841(a)(1) and 18 U.S.C. § 924(c). Robert contends that the district court improperly increased his base offense level for possession of a dangerous weapon when he was already subject to the five-

year mandatory minimum consecutive prison sentence for possession of a firearm pursuant to 18 U.S.C. § 924(c)(1). As a recent amendment to the sentencing guidelines makes clear, we hold that it is improper to apply any guidelines weapons enhancement for an underlying offense even where, as here, the co-defendant, as part of the jointly undertaken criminal activity, possessed a firearm different from the one for which the defendant was convicted under 18 U.S.C. § 924(c). We reject Robert's other claims, made for the first time on appeal, that the district court erred in calculating the drug quantity when determining his base offense level and that his guilty plea was involuntary because of the filing of a superseding indictment. We further reject Gary's challenge, also for the first time on appeal, to the sufficiency of the factual basis supporting his guilty plea to 18 U.S.C. § 924(c)(1). We decline to rule on either Robert's or Gary's claims of ineffective assistance of counsel because of insufficiency of the record.

## I.

In October, 1998, the Drug Enforcement Administration ("DEA") learned from a confidential source that Edwin Cadiente was distributing methamphetamine in Honolulu, Hawaii. As part of its ensuing investigation, on October 20, 1998, the DEA arranged for the confidential source to contact Cadiente about a drug purchase. Cadiente provided a free sample to the confidential source, explaining that he had obtained it from his supply source, Robert Aquino. DEA laboratory reports indicated that the sample of methamphetamine had a net weight of 3.5 grams and consisted of a substance containing d-methamphetamine hydrochloride with a purity of 43 percent.

A week later, the confidential source and Cadiente negotiated the purchase of one ounce of methamphetamine for $1,150 by an undercover agent posing as a buyer. The three met, and Cadiente informed them that Robert Aquino was prepared to complete the transaction at a McDonalds' parking lot in Kapalai, Hawaii. The three proceeded to the McDonalds where they found not Robert but Robert's brother, Gary, and Daniel Sugui sitting in a 1986 Chevrolet Camaro, later determined to be registered to Robert Aquino. Gary Aquino approached them, asking for the money and saying that he, Cadiente, and Sugui would go to Robert's house and return with the drugs. The undercover agent responded that the arrangement was unacceptable and also declined to ride with them to Robert's residence to obtain the drugs. Gary Aquino then refused to complete the sale and left the area.

Later that evening Robert agreed to meet Cadiente, the confidential source, and the undercover agent at the McDonalds' parking lot. Robert arrived with Gary and Sugui and handed the undercover agent a package containing 27.8 grams of methamphetamine with a purity of 45 percent. Satisfied, the undercover agent paid Robert $1,150 in prerecorded funds. Robert indicated that he could sell one-pound quantities of methamphetamine for $14,500 and that if the undercover agent was interested in such transactions he should contact Cadiente.

Over the course of the next two days the undercover agent and Cadiente engaged in negotiations for the sale of two pounds of methamphetamine. On the evening of the 29th, Robert directed Cadiente and the undercover agent to Zippy's Restaurant in Pearl City, Hawaii. There Robert displayed a black cloth binder containing plastic sealed bags of a light brown substance. Robert advised the undercover agent that "it was the same stuff from the prior deal." When Sugui pulled into the parking lot, Robert remarked that Sugui was "watching his back." The undercover agent left the restaurant, indicating he would return with the money. Instead he gave the arrest signal to surveillance investigators who entered the restaurant, arrested Robert Aquino, Gary Aquino, and

Cadiente, and recovered the black cloth binder containing the two plastic bags. The DEA laboratory reports indicated that the two plastic bags in the black cloth binder contained a net weight of 885.5 grams of a substance containing d-methamphetamine hydrochloride with a purity of 44 percent. In addition to the drugs, the DEA agents also recovered a loaded .22 caliber semi-automatic pistol from Robert, an unloaded .38 caliber revolver from the trunk of the car Sugui was driving, together with 17 rounds of ammunition from the front seat, and a loaded .38 caliber revolver from the middle console of the car Robert and Gary were driving. DEA agents also found drug paraphernalia in Sugui's car and drug paraphernalia and over seven thousand in cash, $350 of which was prerecorded funds from the prior deal, in Robert's and Gary's car.

Robert provided a written statement to investigators later that evening. He admitted that he was involved in the methamphetamine deals on October 27th and 29th and that he possessed the .22 caliber pistol. Robert said that Gary possessed the .38 caliber revolver recovered from their car and Sugui possessed the .38 recovered from his car. According to Robert, Gary and Sugui provided protection for him because he previously had been robbed and beaten during a drug transaction. Robert also confessed that his supplier had previously provided him with seven pounds of methamphetamine, which he had sold in June and August of 1998. Cadiente provided a statement in which he indicated that in August, 1999 he began working for the drug supplier, Robert Aquino, who fronted him ounce-quantities of methamphetamine. Cadiente also admitted his involvement in the October 27 and 29 drug transactions. He described Gary Aquino as Robert Aquino's "messenger" and Sugui as Robert Aquino's "bodyguard." He also admitted that he was aware that Robert Aquino, Gary Aquino and Sugui carried firearms during drug transactions.

Sugui also provided a statement to investigators. Although he initially denied knowledge of the firearm and ammunition recovered from his 1986 Camaro, Sugui later admitted that the firearm and ammunition belonged to Robert Aquino and that Robert Aquino may have wanted him present at Zippy's as "his back up." Sugui also acknowledged being aware that Robert Aquino was conducting a drug transaction at Zippy's.

In his statement made that same evening, Gary admitted that he was present during the methamphetamine transactions on October 27 and 29, 1998.

A search warrant executed at Robert's home produced 13 more guns, drug paraphernalia and cash, some of which came from the drug deal on the 27th. DEA investigators also recovered 882.2 grams of methamphetamine with a purity of 45 percent and 90.9 grams of methamphetamine with a purity of 44 percent from the master bedroom.

## II.

On November 18, 1998 the grand jury returned a four-count indictment charging Robert, Gary, Sugui and Cadiente each with one count of conspiracy to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. § 846, and two counts of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2. Count IV of the indictment charged Robert alone with carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). Robert pleaded guilty to Counts I through IV on March 15, 1999 without the benefit of a plea agreement.

After Robert pleaded guilty but before he was sentenced, on April 28, 1999, the grand jury returned a superceding indictment. The superseding indictment did not add any new counts with respect to Robert but charged Gary in Count V with carrying a firearm—the .38 caliber revolver re-

covered from Robert's and Gary's car—during and in relation to a drug-trafficking crime in violation of 18 U.S.C. § 924(c)(1). The superceding indictment also charged Sugui under § 924(c)(1) with carrying the .38 caliber revolver recovered from his car and with two additional counts.

On September 13, 1999 the district court sentenced Robert to 157 months imprisonment (97 months for Counts I, II, and III, and 60 months for Count IV, to run consecutively), a five-year period of supervised release, and $400 in special assessments. The pre-sentence report recommended, and the district court applied, a two-level increase to Robert's base offense level pursuant to § 2D1.1(b)(1) of the United States Sentencing Guidelines ("U.S.S.G."), over Robert's objection that the enhancement was improper because he was also convicted of violating 18 U.S.C. § 924(c)(1) for which he was subject to a five-year minimum mandatory sentence. On December 6, 1999 the district court sentenced Gary to 106 months imprisonment (46 months for Counts I, II, and III, and 60 months for Count IV, to run consecutively), a five-year period of supervised release, and $400 in special assessments. The court rejected Gary's request for a reduction under the safety valve provision of U.S.S.G. § 2D1.1(b)(6). We have jurisdiction over Robert's and Gary's timely appeals pursuant to 28 U.S.C. § 1291.

## III.

Robert's claim that the district court erred in increasing his base offense level under U.S.S.G. § 2D1.1(b)(1) has merit. Section 2D1.1(b)(1) provides for an increase by two levels of the base offense level "if a dangerous weapon (including a firearm) was possessed" during an offense involving drugs. Robert objected to the pre-sentence report at the time of sentencing to this two-level increase, arguing that his guilty plea under 18 U.S.C. § 924(c)(1) for carrying a firearm during a drug trafficking crime precluded an additional en-

hancement under Section 2D1.1(b)(1). The district court overruled Robert's objection, relying principally on Application Note 2 to U.S.S.G. § 2K2.4, which then provided:

> Where a sentence under this section is imposed in conjunction with a sentence for an underlying offense, any specific offense characteristic for the possession, use, or discharge of an explosive or firearm ... is not to be applied in respect to the guideline for the underlying offense.

The Background Commentary to that Application Note stated:

> 18 U.S.C. §§ 844(h), 924(c), and 929(a) provide mandatory minimum penalties for the conduct prescribed. To avoid double counting, when a sentence under this section is imposed in conjunction with a sentence for an underlying offense, any specific offense characteristic for explosive or firearm discharge, use, or possession is not applied in respect to such underlying offense.

The district court reasoned from that Commentary that the guideline prohibiting an enhancement for any firearm was solely intended to avoid double-counting. Enhancing Robert's base offense level by two would not result in impermissible double-counting because the two-level increase was applied on the basis of the two .38 caliber revolvers that Robert admitted providing to his co-defendants, Gary and Sugui. The court further reasoned that the sentence for the § 924(c) charge covered only the defendant's possession of a .22 caliber Beretta semi-automatic pistol, and thus, the five-year mandatory minimum punished that conduct only. The district court concluded that the enhancement was necessary to reach Robert's conduct in providing the firearms to his co-defendants, which they possessed at the time of their arrest.

Although at the time of sentencing the plain language of Application Note 2 to Section 2K2.4 precluded the district court

from applying "*any* specific offense characteristic for the possession of ... an explosive or firearm" (emphasis added) to the underlying offense, courts interpreting these sentencing provisions had differed as to whether the prohibition was limited to firearms directly involved in the underlying offense or extended to other firearms or weapons within the scope of relevant conduct under U.S.S.G. § 1B1.3. For example, in *United States v. Rodriguez*, 65 F.3d 932 (11th Cir.1995), *cert. denied*, 517 U.S. 1112, 116 S.Ct. 1335, 134 L.Ed.2d 485 (1996), the Eleventh Circuit concluded that Application Note 2 prohibits an enhancement for a defendant's possession of the same weapon underlying the § 924(c) conviction, but not for a co-conspirators' possession of a firearm during the commission of the conspiracy, reasoning:

> This provision applies to forbid enhancements for the defendant's possession of the weapon, since punishment for possession of that weapon has been meted out in the 924(c) sentence. We do not read the note to suggest that enhancement for a separate weapons possession, such as that of a co-conspirator, is prohibited.

*Id.* at 933 (citations omitted). Similarly, in *United States v. Washington*, 44 F.3d 1271, 1280–81 (5th Cir.), *cert. denied*, 514 U.S. 1132, 115 S.Ct. 2011, 131 L.Ed.2d 1010 (1995), the Fifth Circuit, while noting that "a sentencing court may not enhance a drug-trafficking sentence on a defendant's possession of a firearm if the defendant also is convicted under Section 924(c) for the possession of that same firearm," found it was not impermissible double-counting to enhance the defendant's sentence under Section 2D1.1 based on a finding that he had provided his co-defendant with a third gun during a drug-trafficking offense.

In *United States v. Willett*, 90 F.3d 404, 405 (9th Cir.1996), we addressed the question whether the district court "erroneously added a two-level enhancement to defendant's base offense level for the pos-session of a dangerous weapon (a knife and a silencer) in addition to the five-year consecutive prison sentence it imposed for possession of a firearm (a .22 caliber semi-automatic pistol)." The panel characterized the issue before it as whether the district court's sentence amounted to impermissible double counting. Noting that "the two-level enhancement was based upon Willett's possession of a knife and a silencer, while the five-year term was based on his possession of a gun," the panel held that there was no error in imposing the two-level enhancement on top of the Section 924(c)(1) conviction because

> the commission of a drug-trafficking crime with a gun, silencer and knife poses a greater risk than does the commission of the same crime with only a gun. Thus, the enhancement was necessary to reflect fully the wrongfulness of the defendant's conduct.

*Id.* at 407–08; *but see United States v. Knobloch*, 131 F.3d 366, 372 n. 5 and 373 (3d Cir.1997) (finding plain error to apply the dangerous weapon enhancement on top of a sentence under 18 U.S.C. § 924(c) "given the unambiguous directive of Application Note 2 and the fact that the probation office called the issue to the attention of the district court.").

■ Since Robert's sentencing, the Sentencing Commission has amended the language in Application Note 2 to Section 2K2.4 to make clear that the interpretation of that language by the *Rodriguez, Washington,* and *Willett* opinions was not what the Commission intended. It is now beyond question that where a defendant is convicted of a § 924(c) violation, his sentence may not be enhanced at all for any conduct for which the defendant is accountable within the scope of relevant conduct under U.S.S.G. § 1B1.3.

The amendment, effective November 1, 2000, instructs:

> If a sentence under this guideline is imposed in conjunction with a sentence for an underlying offense, do not apply

any specific offense characteristic for possession, brandishing, use, or discharge of an explosive or firearm when determining the sentence for the underlying offense. A sentence under this guideline accounts for any explosive or weapon enhancement for the underlying offense of conviction, including any such enhancement that would apply based on conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct).

U.S.S.G. § 2K2.4, cmt. n. 2 (2000).

The amended Application Note 2 specifically addresses Robert's situation, admonishing courts not to "apply any weapon enhancement in the guideline for the underlying offense, for example, if (A) a co-defendant, as part of the jointly undertaken criminal activity, possessed a firearm different from the one for which the defendant was convicted under the 18 U.S.C. 924(c) . . . ." To the extent that the *Willett* decision is inconsistent with amended Application Note 2, it is no longer good law.

■ The government contends that amended Note 2 is inapplicable because it constitutes a substantive change in the law. We have consistently held that "when an amendment is a clarification, rather than an alteration, of existing law, then it should be used in interpreting the provision in question retroactively." *United States v. Sanders,* 67 F.3d 855, 856 (9th Cir.1995). In *Sanders,* we reasoned that this principle accords with the sentencing guidelines, which provide:

The guidelines manual in effect on a particular date shall be applied in it's entirety . . . However, if the court applies an earlier addition of the guidelines manual, the court shall consider subsequent amendments, to the extent that such amendments are clarifying rather than substantive changes.

U.S.S.G. § 1B1.11(b)(2).

We conclude that the amendment in this case is a clarifying, rather than substantive, amendment and applies to Robert's case. In the Historical Notes to the amendment, the Sentencing Commission twice states that the amendment is intended to clarify under what circumstances defendants sentenced for violations of 18 U.S.C. § 924(c) in conjunction with the underlying offense may receive other guidelines weapons enhancements for those same offenses. Moreover, the Commission noted the disparity in interpretation of the words "underlying offense" in the former Application Note 2, citing with disapproval cases where "offenders had received both the mandated statutory penalty and a guideline weapon enhancement in circumstances in which the guideline generally would require a single weapon enhancement." U.S.S.G. § 2K2.4, app. C (2000). The Commission sets forth the purposes of the amendment: to clarify the application of the commentary, to address the disparate application arising from conflicting interpretations of the current guidelines in different courts; and to avoid duplicative punishment that results when sentences are increased under both the statutes and guidelines for substantially the same harm. *Id.* Furthermore, the Sentencing Commission specifically listed amended Application Note 2 as one which may be applied retroactively. *See* U.S.S.G. § 1B1.10 (a) and (c) (listing amendment 599—the amendment at issue here—as one to be applied retroactively).

■ Therefore, the district court improperly increased Robert's base offense level pursuant to U.S.S.G. § 2D1.1(b)(1). We do not view either of Robert's remaining claims so favorably, however. We review each for plain error because neither issue was raised before the district court. *United States v. Romero–Avila,* 210 F.3d 1017, 1021–22 (9th Cir.), *cert. denied,* — U.S. ——, 121 S.Ct. 233, 148 L.Ed.2d 167 (2000). "Plain error is found only where there is (1) error, (2) that was clear or obvious, (3) that affected substantial rights, and (4) that seriously effected the fairness, integrity, or public reputation of the judicial proceedings." *United States v.*

*Vences,* 169 F.3d 611, 613 (9th Cir.1999) (quotation omitted); *see* Fed.R.Crim.P. 52(b).

■ Robert first argues that the district court erred in converting the amount of methamphetamine traceable to him to its marijuana equivalency. This was not error, plain or otherwise, under U.S.S.G. § 2D1.1(a)(3). A criminal defendant's base offense level for drug crimes varies with the type and quantity of drugs involved. The district court adopted the recommendation in the pre-sentence report that Robert was responsible for a total of 1,189.9 grams of methamphetamine stemming from the drug transactions at the end of October and from the amount recovered from his home. Based on purities of 43 to 45 percent, the 1,189.9 grams converts to 840.4 grams of methamphetamine (actual).

■ Nor did the district court err in adopting the recommendation in the pre-sentence report holding Robert responsible for the seven pounds of methamphetamine sold by him during June and August of 1998. Robert admitted that he distributed seven pounds of methamphetamine sold to him by the same supplier in the underlying offense. These seven pounds were properly taken into account by the district court when sentencing Robert. *See* U.S.S.G. § 1B1.3(a)(2); & cmt. n. 3 (2000). Because the actual purity of the seven pounds of methamphetamine was not known, the court properly treated it as generic methamphetamine and converted the 3,175.2 grams of "generic" methamphetamine to its marijuana equivalent. *See* U.S.S.G. § 2D1.1, cmt. n. 10 (2000). Nor did the district court commit error in the conversion process. It adopted the conversion rates based on the table set forth in U.S.S.G. § 2D1.1 as set forth in the pre-sentence report and properly found Robert responsible for 6,350.4 kilograms of marijuana for the seven pounds of methamphetamine (generic) and 8,404 kilograms of marijuana for the 840.4 grams of methamphetamine (actual).

Therefore, Robert was responsible for a total of 14,754.4 kilograms of marijuana.

Finally, Robert argues for the first time on appeal that although the district court complied with the requirements of Federal Rule of Criminal Procedure 11 at the time he pleaded guilty, the court should have asked him to reaffirm his understanding of the nature of the charges and his potential sentencing exposure after the grand jury returned the superceding indictment. He contends that the district court's failure to do so renders his guilty plea involuntary, arguing that his cooperation led to the additional § 924(c)(1) charges against his co-defendants in the superceding indictment and that those additional charges in turn formed the basis for the § 2D1.1(b)(1) enhancement. Although it does not appear that the district court erred in failing to reaffirm Robert's plea of guilty when no new charges against him were contained in the superceding indictment, we need not reach his due process argument, because we have concluded that he was not in fact exposed to any enhancements based on the additional gun charges against his co-defendants.

## IV.

■ Gary claims for the first time on appeal that the district court erred when it found sufficient evidence to support his guilty plea for knowingly possessing a .38 revolver in violation of 18 U.S.C. § 924(c). Under Rule 11(f) of the Federal Rules of Criminal Procedure, the district court must determine whether there is a factual basis for the entry of a guilty plea before entering its judgment. This requires finding "sufficient evidence to conclude that the conduct admitted by the defendant constitutes the offense charged." *United States v. Barker,* 681 F.2d 589, 592 (9th Cir.1982). We do not believe the district court erred when it found a sufficient factual basis for Gary's guilty plea. *See United States v. Angeles–Mascote,* 206 F.3d 529, 530 (5th Cir.2000) (sufficiency of

the factual basis for guilty plea under Rule 11(f) reviewed for plain error when raised for the first time on appeal).

18 U.S.C. § 924(c) imposes a 5–year minimum sentence on "any person who, during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm...." Thus, to support his guilty plea, the record must provide sufficient evidence that Gary used or carried a firearm within the meaning of § 924(c). We have previously held that to "carry" a firearm within the meaning of § 924(c), one "must have transported the firearm on or about his or her person. This means the firearm must have been immediately available for [his] use." *United States v. Staples,* 85 F.3d 461, 464 (9th Cir.1996).

Although Gary did not use—or actively employ a firearm, *see Bailey v. United States,* 516 U.S. 137, 143, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), Gary admitted to conduct at his sentencing hearing that provides a sufficient factual basis for a finding that Gary carried a firearm in relation to a drug trafficking crime. Gary testified that when Robert asked him to go to Pearl Ridge, he knew that he was going to "another drug transaction." While driving there, Robert asked Gary to pass the loaded .38 revolver located under Gary's chair. Gary grabbed the revolver, and it was shoved on the passenger side of the arm rest divider between the two men. Gary was riding in the passenger's seat and could access the revolver at all times. Because the revolver was "immediately available for [Gary's] use," the evidence provided a sufficient factual basis to support Gary's guilty plea for carrying a firearm in relation to a drug trafficking crime.

## V.

We decline to rule on either Robert's or Gary's claims of ineffective assistance of counsel because "claims of ineffective assistance of counsel are better addressed in collateral proceedings under 28 U.S.C. § 2255." *United States v. Davis,* 36 F.3d

1424, 1433 (9th Cir.1994). We do not believe the record in this case is sufficiently developed to rule on these claims at this time.

## VI.

For the forgoing reasons, we affirm the convictions of both Robert and Gary; vacate Robert's sentence and remand to the district court for resentencing consistent with this opinion; and do not rule on the ineffective assistance of counsel claims. AFFIRMED in part; REVERSED in part; and REMANDED.