**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.                                                      No. 03-4745

RANDY GENE FENTON,
            *Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
John T. Copenhaver, Jr., District Judge.
(CR-03-43)

Submitted: February 2, 2004

Decided: March 8, 2004

Before WILLIAMS, TRAXLER, and KING, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

Mary Lou Newberger, Federal Public Defender, George H. Lancaster, Jr., Assistant Federal Public Defender, Charleston, West Virginia, for Appellant. Kasey Warner, United States Attorney, Michael H. Spencer, Assistant United States Attorney, Charleston, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Randy Gene Fenton pled guilty to distribution of more than five grams of methamphetamine in violation of 21 U.S.C.A. § 841(a), (b)(1)(B) (West 1999 & Supp. 2003), and was sentenced to a term of 108 months imprisonment. In this appeal, Fenton contests the district court's determination of the quantity of methamphetamine attributable to him. *U.S. Sentencing Guidelines Manual* § 2D1.1 (2002). We affirm.

Fenton made the following sales of methamphetamine to an undercover officer in October 2002:

> On October 2, Fenton sold the officer 1.1 grams of methamphetamine for $100. The methamphetamine tested 21% pure and yielded .23 grams of actual methamphetamine.

> On October 3, Fenton sold the officer 3.9 grams of methamphetamine for $250. The methamphetamine was 16% pure and yielded .62 grams of actual methamphetamine.

> On October 9, Fenton sold the officer 16 grams of methamphetamine that was 25% pure and yielded four grams of actual methamphetamine, and 15.9 grams of methamphetamine that was 21% pure and yielded 3.3 grams of actual methamphetamine for $750. Fenton also offered to sell cocaine and gave the officer 1.1 grams of cocaine so that he could try it.

> On October 23, Fenton sold the officer 55.3 grams of methamphetamine that was 29% pure and yielded 11 grams of actual methamphetamine for $1500. Fenton told the officer he could obtain a pound of methamphetamine with a

day's notice and would sell it for $10,000 a pound or $5000 a half-pound.

Fenton was arrested on December 12, 2002, when authorities began to suspect he was about to leave the area. He was in possession of 2.4 grams of methamphetamine that was 29% pure and yielded .69 grams of actual methamphetamine, $9518 in currency, a loaded firearm, a quantity of marijuana, and various unidentified pills.

Over Fenton's objection, the district court determined that the $9518 was drug proceeds and estimated that it represented 12.69 ounces of methamphetamine, the amount that could be purchased at $750 per ounce. The court determined that the average purity of the methamphetamine Fenton had sold the officer was 21% and, using that percentage, converted the estimated 12.69 ounces of methamphetamine to 79.14 grams of pure methamphetamine. This calculation yielded a total of 95.45 grams of pure methamphetamine which established a base offense level of 32. USSG § 2D1.1(c)(4) (applicable in offense involving 50-150 grams of methamphetamine (actual)).

The court rejected Fenton's claim that the $2600 paid to him by the undercover officer should be deducted from the $9518 in his possession when he was arrested, finding that, because Fenton's last sale to the officer occurred fifty days before his arrest, it was a reasonable assumption that those funds had already been used. The court found that there was "no other reasonable explanation than drug sales" for his possession of the entire $9518. The court found that only a small part of the total quantity of methamphetamine that Fenton sold to the officer was sold for $100 per gram, while most was sold at a price less advantageous to Fenton for sentencing purposes. The court determined that the fair conversion rate for the seized funds was $750 per ounce rather than $100 per gram as Fenton suggested. The court decided against conversion of the funds to cocaine, which Fenton favored, because there was no evidence of cocaine sales despite Fenton's offer to sell cocaine to the officer.

The court imposed a sentence of 108 months imprisonment, the bottom of the range. Fenton contends on appeal that the district court clearly erred in failing to exercise caution in determining the quantity of methamphetamine attributable to him.

The district court's determination of the amount of drugs attributable to the defendant for sentencing purposes is generally a factual finding reviewed for clear error. *United States v. Sampson*, 140 F.3d 585, 591 (4th Cir. 1998). When the amount of drugs "seized does not reflect the scale of the offense, the district court shall approximate the quantity to be used for sentencing." USSG § 2D1.1, comment. (n.12). When approximation is necessary, the court "may properly convert cash amounts linked credibly to the defendant's purchase or sale of narcotics so long as the court does not engage in double counting of both the proceeds and the narcotics themselves." *Sampson*, 140 F.3d at 592.

Fenton contends that the district court erred when it converted the seized funds to actual methamphetamine because it failed to exercise appropriate caution. He relies principally on *United States v. Sepulveda*, 15 F.3d 1161, 1198 (1st Cir. 1993) (holding that, "where uncertainty reigns" about the amount of drugs involved in a conspiracy, courts should "err on the side of caution"). We are not persuaded that the district court failed to exercise appropriate caution in this case.

Fenton claims first that the court erred in refusing to reduce the $9815 in his possession by $2600 to account for money he received from the undercover officer and avoid double counting. In connection with this issue, he argues that the government failed to produce evidence to support the court's conclusion that the entire $9518 was drug money. We note that, at sentencing, Fenton did not challenge the district court's treatment of the $9518 as drug proceeds. He objected only to the court's failure to deduct $2600 before approximating the amount of methamphetamine the money represented. Applying the plain error standard, *see United States v. Mackins*, 315 F.3d 399, 406 (4th Cir.), *cert. denied*, 123 S. Ct. 2099 (2003), we are satisfied that the district court did not plainly err in treating all the money as drug proceeds because Fenton was known to sell methamphetamine and the court had no evidence of any other source for the money.

The court did not clearly err or fail to exercise appropriate caution in concluding that none of the money was proceeds of Fenton's sales to the undercover officer because fifty days had passed since Fenton's last sale to the officer. Fenton told the undercover officer that he

could obtain large amounts of methamphetamine on short notice. Thus, the court could reasonably infer that, by the time he was arrested, Fenton had used the money he received from the officer during the preceding month and a half, and that the money he possessed at arrest was the proceeds of later drug sales.

Fenton also maintains that the district court erred by failing to exercise appropriate caution when it converted the seized funds to methamphetamine rather than cocaine because there was no evidence that the money came from methamphetamine sales rather than cocaine sales. The court had before it evidence of Fenton's methamphetamine distributions and evidence of his willingness to sell cocaine, but no definite evidence that he had sold cocaine. Therefore, the court did not clearly err in converting the money to the approximate quantity of methamphetamine it represented.

Next, Fenton argues that the court erred in converting the funds at the rate of $750 per ounce rather than $100 per gram. He asserts that "a cautious estimation of the price of [his] cocaine sales would be $100 per gram" because he told the undercover officer that he would sell cocaine for the same price as methamphetamine and charged $100 per gram for the first methamphetamine sale. This claim is moot because the court correctly determined that the money should be converted to methamphetamine. Assuming that Fenton intends to challenge the rate at which the district court converted the funds to methamphetamine, the court did not clearly err because most of the methamphetamine Fenton sold to the officer was priced at $750 per ounce. Of 92.2 grams of methamphetamine mixture distributed to the officer, only five grams were sold at a price higher than $750 per ounce.

Fenton also claims that the court erred by refusing to convert the funds to a quantity of methamphetamine mixture and to convert both that amount and the known quantity of pure methamphetamine to marijuana equivalents. He relies on *United States v. Aquino*, 242 F.3d 859 (9th Cir. 2001). In *Aquino*, the district court dealt with a quantity of seized methamphetamine of known purity and seven pounds of methamphetamine previously sold by the defendant which was of unknown purity. The court treated the previously sold seven pounds as "generic" methamphetamine and converted that amount and the

known quantity of pure methamphetamine to their marijuana equivalents to determine the base offense level.

In this case, the district court could have followed the procedure used in *Aquino*, but instead chose to approximate the amount of methamphetamine represented by the seized money in a different but equally valid manner. Application Note 12 does not dictate a particular method for approximating the quantity of drugs. Courts have approved the use of the average purity of seized quantities of methamphetamine to estimate the purity of the total amount of methamphetamine distributed. *See United States v. Lopes-Montes*, 165 F.3d 730, 731-32 (9th Cir. 1999). We conclude that the district court did not clearly err when calculating the amount of methamphetamine attributable to Fenton.

We therefore affirm the sentence imposed by the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED*