**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Humberto LOPES–MONTES,
Defendant–Appellant.**

No. 96–50481.

United States Court of Appeals,
Ninth Circuit.

Submitted Nov. 2, 1998.*

Decided Jan. 15, 1999.

Robert K. Steinberg, Los Angeles, California, for the defendant-appellant.

Jerome H. Friedberg, Assistant United States Attorney, Los Angeles, California, for the plaintiff-appellee.

Before: ALEX KOZINSKI and ANDREW J. KLEINFELD, Circuit Judges, and OWEN M. PANNER,** District Judge.

KOZINSKI, Circuit Judge:

We consider the appropriate method for determining the quantity of drugs under United States Sentencing Guideline § 2D1.1.

I

Humberto Lopes–Montes conspired to sell about 15 pounds (6.8 kilograms) of methamphetamine to a confidential government informant. The day before his arrest, Lopes–Montes displayed to the informant approxi-

---

* The panel unanimously finds this case suitable for decision without oral argument.  Fed. R.App. P. 34(a);  9th Cir. R. 34–4.

** The Honorable Owen M. Panner, Senior United States District Judge for the District of Oregon, sitting by designation.

mately half of the negotiated amount of methamphetamine and promised to have the entire 6.8 kilograms ready for delivery the following day. The police arrested Lopes–Montes during the transaction and seized 3.2 kilograms of methamphetamine mixture, of which about 2.62 kilograms was pure methamphetamine. Lopes–Montes pled guilty to conspiracy to distribute methamphetamine and possession with intent to distribute.

Using the 1995 Sentencing Guidelines, the Presentence Report calculated Lopes–Montes's base offense level at 34 based on the fact that Lopes–Montes had agreed to deliver 6.8 kilograms of methamphetamine mixture. *See* U.S. Sentencing Guidelines Manual § 2D1.1(c)(3) (1995). The government objected, arguing that the amount of *pure* methamphetamine that Lopes–Montes agreed to deliver was the proper measure of his offense. The government proposed to determine this amount by extrapolating the amount of pure methamphetamine in the agreed-upon 6.8 kilograms from the purity of the 3.2-kilogram mixture actually recovered. Because the agreed-upon amount of methamphetamine was likely to contain at least 3 kilograms of pure methamphetamine, the government urged the district court to set the base offense level at 38. *See id.* § 2D1.1(c)(1). Lopes–Montes filed a position paper supporting the Presentence Report and seeking a downward departure for early acceptance of responsibility and for allegedly being no more than a "mule." He did not challenge the Presentence Report's factual findings. The district court set the base offense level at 38, subtracted 3 points for acceptance of responsibility, departed downward an additional 2 points, and sentenced Lopes–Montes to 156 months in prison.

## II

█ Lopes–Montes argues that the district court should have determined the base offense level using only the drugs actually seized. The Sentencing Guidelines, however, give district courts discretion to estimate the quantity of drugs involved where "the amount [of drugs] seized does not reflect the scale of the offense." *Id.* § 2D1.1 application note 12. If the offense involves an agree-

ment to sell drugs, "the agreed-upon quantity of the controlled substance shall be used to determine the offense level unless the sale is completed and the amount delivered more accurately reflects the scale of the offense." *Id.*

█ There is no dispute that Lopes–Montes agreed to deliver 6.8 kilograms of methamphetamine. The Sentencing Guidelines require use of the 6.8 kilograms rather than the 3.2 kilogram mixture actually recovered unless Lopes–Montes can "establish[ ] that he ... did not intend to provide, or was not reasonably capable of providing, the agreed-upon quantity of the controlled substance." *Id.* Lopes–Montes bore the burden of proof, *see United States v. Barnes,* 993 F.2d 680, 683–84 (9th Cir.1993), but offered no evidence that he would have been unable to deliver the entire 6.8 kilograms or did not intend to do so. The determination of the quantity of narcotics involved in an offense is a factual finding which we review for clear error, *see United States v. Asagba,* 77 F.3d 324, 325 (9th Cir.1996), and the district court's conclusion that the agreed-upon 6.8 kilograms most accurately reflected the scale of Lopes–Montes's offense was certainly not clearly erroneous.

## III

█ Once the quantity of drugs involved is established, the court must "use the offense level determined by the entire weight of the mixture or substance, or the offense level determined by the weight of the ... methamphetamine (actual), whichever is greater." U.S.S.G. § 2D1.1(c) n.B. The "actual" methamphetamine is calculated as the percentage of methamphetamine mixture that is pure: "[A] mixture weighing 10 grams containing [methamphetamine] at 50% purity contains 5 grams of [methamphetamine] (actual)." *Id.* In sum, the Sentencing Guidelines require the district court to determine the base offense level by using the quantity of pure methamphetamine contained in a mixture, where that quantity yields the greatest offense level.

The 3.2 kilograms of methamphetamine mixture seized from Lopes–Montes and his

co-conspirator contained 2.62 kilograms of pure methamphetamine-a purity level of approximately 80%. Absent evidence to the contrary, the district court was entitled to assume that the remaining 3.6 kilograms Lopes–Montes agreed to deliver was a mixture with a similar purity level. The district court could therefore reasonably calculate that the full 6.8 kilograms of mixture would contain about 5.5 kilograms of pure methamphetamine. Possession of 3 or more kilograms of pure methamphetamine yielded a base offense level of 38, while possession of a 6.8–kilogram mixture yielded a lower offense level of 34 under the 1995 guidelines in effect when Lopes–Montes was sentenced. *See* U.S.S.G. § 2D1.1(c)(1) & (2). The district court sentenced Lopes–Montes using the higher base offense level, as required by U.S.S.G. § 2D1.1(c) n.B.

The method employed by the district court to determine Lopes–Montes's base offense level is similar to those endorsed by the Seventh and Eighth Circuits. *See United States v. Jarrett,* 133 F.3d 519, 529–31 (7th Cir.1998); *United States v. Newton,* 31 F.3d 611, 614 (8th Cir.1994). In *Jarrett,* slightly more than 1 kilogram of heroin was seized, but the evidence showed that the scale of the conspiracy was much larger, leading the district court to estimate the total amount of heroin distributed at 75.4 kilograms. *See Jarrett,* 133 F.3d at 529. The district court then calculated the purity of the 75.4 kilograms of heroin based on the purity of the kilogram actually seized and other evidence admitted during the trial, and set the base offense level as required by U.S.S.G. § 2D1.1. *See Jarrett,* 133 F.3d at 529. In upholding the sentence, the Seventh Circuit noted that "[t]here must be some room for speculation and reasonable estimation [by the district court] ... because USSG § 2D1.1 mandates that 'courts *shall* approximate the quantity of the controlled substance' (emphasis added) when the amount seized does not reflect the true scale of the offenders' activities." *Id.* at 530. The court concluded that the district court's method of approximation was reasonable and fair because "[t]he percentages and quantities [used to determine the base offense level] were not pulled out of

thin air" and accurately captured the scale of the conspiracy. *Id.*

The district court in *Newton* had relied entirely on the purity of the methamphetamine actually seized to estimate the purity of the unrecovered methamphetamine involved in the offense. *See Newton,* 31 F.3d at 614. Interpreting U.S.S.G. § 2D1.1 to permit extrapolation of total drug quantity and purity from the amount and purity of drugs actually seized, the Eighth Circuit upheld the sentence imposed by the district court. *See Newton,* 31 F.3d at 614.

We agree with our sister circuits that using the purity of drugs actually seized to estimate the purity of the total quantity of drugs the defendant agreed to deliver is an appropriate method of establishing the base offense level. The estimated purity level of the agreed-upon amount is presumed to serve as the sentencing baseline if it yields the highest base offense level. *See* U.S.S.G. § 2D1.1(c) n.B. The defendant may escape this presumption if he proves he never intended to deliver or was incapable of delivering the agreed-upon amount, *see id.* § 2D1.1 application note 12, but no such proof was offered here.

The district court relied on a reasonable estimate of the amount of pure methamphetamine that would have been recovered had Lopes–Montes completed delivery of the 6.8 kilograms of methamphetamine. As Lopes–Montes was unquestionably willing and able to deliver this amount, the district court did no more than impose a sentence within the range the Sentencing Guidelines contemplate for his offense.

AFFIRMED.