United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 31, 2007**

Charles R. Fulbruge III
Clerk

*In the United States Court of Appeals
for the Fifth Circuit*

No. 05-10754

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

SHANNON DEWAYNE DAVIS,

Defendant – Appellant.

Appeal from the United States District Court
for the Northern District of Texas
No. 4:04-CR-00199

Before BARKSDALE, BENAVIDES, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Shannon DeWayne Davis pleaded guilty to distributing crack cocaine in violation of 21 U.S.C. § 841(a)(1) and appeals the sentence imposed. The question before us is the quantity for which Davis can be held accountable for sentencing purposes. We conclude that, under section 2D1.1 of the United States Sentencing Guidelines, for purposes of calculating the advisory sentencing range, quantities of a non-controlled substance should not be included to determine the offense level if the defendant meets his burden of establishing that he either did not have the intent to deliver or did not have the capability of

delivering the agreed-upon quantity of the controlled substance.[1] Because the facts are undisputed that Davis intended to deliver a non-controlled substance rather than the 85.05 grams of crack cocaine he agreed to deliver, we vacate Davis's sentence and remand for resentencing.

**I**

Davis was indicted on four counts of distributing crack cocaine in violation of 21 U.S.C. § 841(a)(1), but he pleaded guilty to a single count involving 21.6 grams of crack cocaine pursuant to a written plea agreement. In the pretrial sentencing report (PSR), the probation officer concluded that Davis should be held responsible for distributing 156.96 grams.[2] The drug quantity calculation included 55.6 net grams of crack cocaine actually delivered to a confidential informant in the four indicted drug transactions, an additional 16.3 grams that Davis agreed to deliver in one of those drug transactions but did not because he intentionally "shorted" the amount of the drug at the time of delivery, and 85.05 grams that Davis agreed to sell to the confidential informant as part of a fifth, unindicted transaction.[3] The inclusion of 85.05 grams is the focus of this appeal.

It is undisputed that Davis agreed to sell the confidential informant 85.05 grams. The

---

[1]UNITED STATES SENTENCING GUIDELINES MANUAL § 2D1.1(a)(3), (c) (2004) (U.S.S.G.).

[2]*See id.* cmt. n.12 ("Types and quantities of drugs not specified in the count of conviction may be considered in determining the offense level [as relevant conduct].").

[3]The PSR does not indicate the source of the remaining .01 grams of crack cocaine attributed to Davis in the total drug calculation but that negligible amount is not contested on appeal and would not impact the result in this case.

informant arrived at the appointed delivery location, which was a grocery store parking lot, as did a car containing Davis and three other occupants. The informant called Davis to let him know he was at the agreed location ready to conclude the transaction, and Davis said he was sending someone else to make the delivery. As DEA agents watched a person believed to be Davis's brother walk around the parking lot, the informant moved to another location and again called Davis to tell him he had moved since no one had approached him. He also advised Davis of his new location. The DEA agents observed the man thought to be Davis's brother return to the vehicle he had exited, and the agents followed that vehicle as it proceeded to an apartment complex located on the same street as the grocery store. Upon arrival at the apartment complex, the four occupants of the vehicle saw police squad cars nearby and fled on foot. Davis and two others were apprehended and arrested, but the fourth person escaped. Two baggies containing approximately 81 grams of a non-controlled, off-white substance were found in the vehicle Davis and his companions left behind.

In the PSR, which includes its addendum, the probation officer recited the foregoing facts and concluded that Davis "was attempting to 'rip-off' the [confidential informant] by selling him 3 ounces of a non-controlled substance in place of crack cocaine."[4] The PSR also concluded that based on prior transactions and historical information, Davis was "capable of producing 3 ounces of crack." On the basis of this latter conclusion, the PSR recommended that Davis be held accountable for the 85.05 grams he agreed to deliver.

---

[4]One ounce is equivalent to approximately 28.3495 grams; accordingly, three ounces is approximately 85.0485 grams.

Davis filed written objections to the PSR, arguing that the 85.05 grams of crack cocaine he agreed to deliver to the confidential informant should not be included in the drug calculation because the substance he attempted to deliver was neither a controlled substance nor a counterfeit drug as defined in 21 U.S.C. § 802.[5] Davis cited note 12 to section 2D1.1 of the Sentencing Guidelines, which says the agreed-upon quantity is not controlling if "the sale is completed and the amount delivered more accurately reflects the scale of the offense," and which directs a district court to "exclude from the offense level determination the amount of controlled substance that the defendant establishes that [he] did not intend to provide or purchase or was not reasonably capable of providing or purchasing."[6]

At the sentencing hearing, Davis again objected, adding that the 85.05 grams should not be included in the drug quantity calculation because the undisputed facts established that he did not intend to deliver that amount of a controlled substance. In overruling the objection, the district court concluded that (1) Davis had the burden to disprove intent *and* capability, (2) the probation officer determined Davis was capable of producing the agreed-upon quantity of crack cocaine, and (3) there was no contrary evidence. The district

---

[5]The term "counterfeit substance" is defined in 21 U.S.C. § 802(7) as:

a controlled substance which, or the container or labeling of which, without authorization, bears the trademark, trade name, or other identifying mark, imprint, number, or device, or any likeness thereof, of a manufacturer, distributor, or dispenser other than the person or persons who in fact manufactured, distributed, or dispensed such substance and which thereby falsely purports or is represented to be the product of, or to have been distributed by, such other manufacturer, distributor, or dispenser.

[6]*Id*.

court explicitly adopted the findings and conclusions in the PSR as modified and supplemented by the addendum. The PSR calculated the advisory sentencing range to be 210 to 262 months based on a total offense level of 33 and a criminal history of five under the Guidelines. The PSR stated that an upward departure might be appropriate on the basis that Davis's criminal history category did not adequately reflect the seriousness of his criminal history or the likelihood that he would commit other crimes. After determining that an upward departure was appropriate for the reasons stated in the PSR, the district court sentenced Davis to 293 months in prison and five years of supervised release.

Davis appeals the district court's drug quantity calculation to the extent the court held him accountable for the 85.05 grams of crack cocaine he agreed to deliver to the confidential informant. Davis does not otherwise challenge the district court's drug quantity calculation, the upward departure, or any other aspect of his sentence.

## II

We are called upon to construe and apply note 12 to U.S.S.G. § 2D1.1, which states in pertinent part:

> Types and quantities of drugs not specified in the count of conviction may be considered in determining the offense level. . . .
>
> In an offense involving an agreement to sell a controlled substance, the agreed-upon quantity of the controlled substance shall be used to determine the offense level unless the sale is completed and the amount delivered more accurately reflects the scale of the offense. . . . If, however, *the defendant establishes* that the defendant did not intend to provide or purchase, *or* was not reasonably capable of providing or purchasing, the agreed-upon quantity of the controlled substance, the court shall exclude from the offense level determination the amount of controlled substance that *the defendant*

5

*establishes* that the defendant did not intend to provide or purchase *or* was not reasonably capable of providing or purchasing.[7]

We regard the Guidelines commentary as authoritative,[8] and when interpreting it, we apply the plain, ordinary and commonly understood meaning of the words.[9] The proper construction of the Guidelines is an issue of law that we review *de novo*.[10]

## A

We first consider Davis's contention that the district court erred in concluding that the 85.05 grams could be included in the total drug quantity as long as Davis had the capability of delivering that amount, even if Davis did not intend to deliver that quantity. We agree with Davis that the district court failed to give effect to the disjunctive language in note 12, which provides:

> If, however, the defendant establishes that the defendant did not intend to provide or purchase, or was not reasonably capable of providing or purchasing, the agreed-upon quantity of the controlled substance, the court shall exclude from the offense level determination the amount of controlled substance that the defendant establishes that the defendant did not intend to provide or purchase or was not reasonably capable of providing or purchasing.[11]

---

[7]*Id.* (emphasis added).

[8]*Stinson v. United States*, 508 U.S. 36, 38 (1993) ("[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline.").

[9]*See United States v. Mendez-Villa*, 346 F.3d 568, 570 (5th Cir. 2003) (applying a plain meaning approach to interpreting the federal sentencing guidelines and commentary).

[10]*See United States v. Villegas*, 404 F.3d 355, 359 (5th Cir. 2005).

[11]U.S.S.G. § 2D1.1 cmt. n.12 (2004).

6

Prior to amendments that became effective in 1995, note 12 included the following provision:

> In an offense involving negotiation to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount. However, where the court finds that the defendant did not intend to produce and was not reasonably capable of producing the negotiated amount, the court shall exclude from the guideline calculation the amount that it finds the defendant did not intend to produce and was not reasonably capable of producing.[12]

This provision was deleted in its entirety. The final paragraph of note 12 in the Guidelines effective November 1, 1995 replaced it.[13] The amendment omitted conjunctive language and added disjunctive language.[14] Accordingly, in applying note 12, a defendant is entitled to have amounts he or she did not intend to provide or purchase excluded from the quantity calculation regardless of whether the amount could have been provided or purchased.

We therefore turn to Davis's intent.

## B

As an initial matter, Davis argues that he has only the burden of production with regard to the exclusionary provision in the final paragraph of note 12 to section 2D1.1 of the Guidelines and that the burden of persuasion regarding the drug quantity remains with the

---

[12]U.S.S.G. § 2D1.1 cmt. n.12 (1994).

[13]*See* U.S.S.G. app. C, vol. 1, amend. 518 at 431 (1997).

[14]*See generally United States v. Cruz-Mendoza*, 147 F.3d 1069, 1072-73 (9th Cir. 1998), *amended on other grounds*, 163 F.3d 1149 (9th Cir. 1998) (concluding that the amendment omitting the conjunctive language and adding the disjunctive language was substantive, not merely clarifying, and thus could not be applied on collateral review of the defendant's sentence).

Government. This court has not had occasion to decide this issue,[15] although in applying the iteration of note 12 in effect before 1995, we noted a split among the circuits.[16] Although the Commission expressly observed in stating its reasons for amending note 12 that "[d]isputes over the interpretation of this application note have produced much litigation,"[17] interpretations of note 12 have diverged even after the amendments. At least one circuit has concluded that the defendant has only the burden of production, while other circuits have held that a defendant bears the burden of production and persuasion with respect to the exclusionary provision.[18]

---

[15]*Cf. United States v. Posada-Rios*, 158 F.3d 832, 878-79 (5th Cir. 1998) (under an earlier version of note 12, affirming the district court's drug calculation because there was "no evidence" that the defendant lacked intent or capability but not considering whether the defendant had a burden of production or persuasion).

[16]*United States v. Mora*, 994 F.2d 1129, 1142 n.15 (5th Cir. 1993) (noting a circuit split on the burden of proof issue under an earlier version of note 12, but not deciding the question); *see also United States v. Raven*, 39 F.3d 428, 434-35 (3d Cir. 1994) (the defendant bears only a burden of production regarding intent and capability); *United States v. Tillman*, 8 F.3d 17, 19 (11th Cir. 1993) (Government bears the burden of persuasion); *United States v. Rodriguez*, 975 F.2d 999, 1008 (3d Cir. 1992) (implicitly charging the Government with the burden of persuasion); *United States v. Richardson*, 939 F.2d 135, 142-43 (4th Cir. 1991) (not explicitly discussing the burden of proof, but vacating the defendant's sentence because no evidence of ability in the record); *United States v. Ruiz*, 932 F.2d 1174, 1183-84 (7th Cir. 1991) (the Government bears the burden of persuasion); *United States v. Bradley*, 917 F.2d 601, 605 (1st Cir. 1990) (the Government bears the burden of persuasion); *United States v. Smiley*, 997 F.2d 475, 480-81 n.7 (8th Cir. 1993) (suggesting that the defendant bears the burden of persuasion); *United States v. Barnes*, 993 F.2d 680, 683-84 (9th Cir. 1993) (defendant bears the burden of persuasion); *United States v. Christian*, 942 F.2d 363, 368 (6th Cir. 1991) (defendant bears the burden of persuasion).

[17]U.S.S.G. app. C, vol. 1, amend. 518 at 433 (1997).

[18]*Compare United States v. Hazut*, 140 F.3d 187, 192 (2d Cir. 1998) (the defendant bears only a burden of production) *with United States v. Barnes*, 244 F.3d 172, 177 & n.6 (1st Cir. 2001) (defendant bears a burden of persuasion); *United States v. Munoz*, 233 F.3d 410, 415 (6th Cir. 2000) (same); *United States v. Wash*, 231 F.3d 366, 373 (7th Cir. 2000) (same); *United States v.*

The language of note 12 states explicitly that if "the defendant establishes" he or she had no intent to provide or purchase the agreed-upon quantity of the controlled substance, the district court shall exclude the amount "that the defendant establishes that the defendant did not intend to provide or purchase."[19] We accordingly join a majority of the circuits and conclude that the defendant bears the burden of persuasion.

In this case, the district court adopted the findings and conclusions in the PSR as modified and supplemented by the addendum. As discussed earlier, the probation officer concluded in the PSR that Davis intended to "'rip off' the confidential informant by selling him 3 ounces of a non-controlled substance in place of crack cocaine." This undisputed finding of fact establishes as a matter of law that Davis did not intend to provide the agreed amount of crack cocaine.

The PSR's additional finding, also adopted by the district court, that Davis *could* have provided the agreed amount based on past conduct and historical evidence is not controlling. There is no indication that Davis intended to provide any crack cocaine as agreed, even if he could have. The unchallenged finding of fact regarding Davis's intent negates any reasonable inference that Davis might have provided the agreed amount at some unspecified future date under an unspecified set of circumstances.

Since Davis never intended to supply the agreed quantity of a controlled substance,

_____

*Maldonado*, No. 99-3334, 2000 WL 825717 at *3 (10th Cir. June 26, 2000) (same); *Brown v. United States*, 169 F.3d 531, 534-35 (8th Cir. 1999) (same); *United States v. Lopes-Montes*, 165 F.3d 730, 731 (9th Cir. 1999) (same).

[19]U.S.S.G. § 2D1.1 cmt. n.12 (2004).

this is not a situation in which the defendant intended to provide a certain amount of controlled substance but was arrested before he could do so.[20] Nor are we faced with a challenge to a conviction, as distinguished from issues presented in determining the drug quantity for sentencing purposes.[21]

### III

Davis preserved his complaint regarding the inclusion of 85.05 grams of crack cocaine in the drug quantity calculation. Without that amount, the drug quantity would have been 71.91 grams, which would result in an advisory Guideline's sentencing range of 168 to 210 months rather than the 210 to 262 months range found by the district court. The district court upwardly departed from the incorrectly calculated advisory range and sentenced Davis to 293 months.

The inquiry under 18 U.S.C. § 3742(f)(1) is whether Davis's sentence "was imposed . . . as a result of an incorrect application of the sentencing guidelines."[22] In a different but analogous context, the United States Supreme Court held, pre-*Booker*,[23] that if

---

[20]*See United States v. Lombardi*, 138 F.3d 559, 562 (5th Cir. 1998) (the defendant agreed to provide 2,000 pounds of marijuana in two or more installments over the span of a week but was arrested after delivering the first 877 pounds).

[21]*See United States v. Burke*, 431 F.3d 883, 886 (5th Cir. 2005) (noting that there can be no conviction for possession or sale of illegal drugs unless the defendant sells or possesses actual drugs, but that there can be a conviction for conspiracy to aid in the distribution of drugs if the requisite intent is present).

[22]18 U.S.C. § 3742(f)(1) (2000 & Supp. IV).

[23]United States v. Booker, 543 U.S. 220 (2005).

a district court intends to depart from the Guidelines range, "a sentence is imposed 'as a result of' a misapplication of the Guidelines if the sentence would have been different but for the district court's error."[24] The Supreme Court explained that "once the court of appeals has decided that the district court misapplied the Guidelines, a remand is appropriate unless the reviewing court concludes, on the record as a whole, that the error was harmless, *i.e.*, that the error did not affect the district court's selection of the sentence imposed."[25] We have held that *Booker* did not excise section 3742(f)(1), and that we "vacate a sentence imposed 'as a result of' a Guidelines error without reaching the sentence's ultimate reasonableness."[26]

This circuit has described sentences as falling into "three types . . . under the advisory sentencing regime."[27] They are "(1) a sentence within a properly calculated Guideline range; (2) a sentence that includes an upward or downward departure as allowed by the Guidelines, which sentence is also a Guidelines sentence; or (3) a non-Guideline sentence which is either higher or lower than the relevant Guideline sentence." Even when imposing a non-Guideline

---

[24]*Williams v. United States*, 503 U.S. 193, 203 (1992).

[25]*Id*.

[26]*United States v. Duhon*, 440 F.3d 711, 716 (5th Cir. 2006); *see also United States v. Tzep-Mejia*, 461 F.3d 522, 526 (5th Cir. 2006) ("If the district court makes an error in an application of the Guidelines, we vacate the resulting sentence without reaching the sentence's ultimate reasonableness. This is so because *Booker* did not excise 18 U.S.C. § 3742(f).") (citations omitted); *United States v. Jones*, 444 F.3d 430, 439 (5th Cir. 2006) ("The remedial opinion in *Booker* did not sever or excise 18 U.S.C. § 3742(f)(3), which directs that a court of appeals 'shall affirm [a] sentence' unless it is 'described in paragraph (1) or (2)' of [3742(f)].").

[27]*Tzep-Mejia*, 461 F.3d at 525 (citing *United States v. Smith*, 440 F.3d 704, 707 (5th Cir. 2006)).

sentence, "the first step ordinarily requires that the district court determine a properly calculated Guideline sentence."[28] If a district court imposes a non-Guideline sentence, and the sentence did not "result from" any error in applying the Guidelines or calculating the advisory range, section 3742(f)(1) does not require a vacatur of the sentence even if there was a Guideline error.[29]

It is unclear whether the district court imposed a Guideline or a non-Guideline sentence.[30] In either event, we cannot say, based on the record before us, that the district

---

[28]*Id*. at 526 (emphasis omitted); *see also Smith*, 440 F.3d at 707; *United States v. Angeles-Mendoza*, 407 F.3d 742, 746 (5th Cir. 2005).

[29]See *Tzep-Mejia*, 461 F.3d at 526.

[30]At the sentencing hearing, the district court stated:

> I'm going to upwardly depart. I'm going to order that the defendant be committed to the custody of the Bureau of Prisons to serve a term of 293 months. Of course, the guideline range is only advisory, and the courts are now obligated to take into account all of the factors contemplated in 18 U.S.C. [§] 3553(a). I suppose the Court always has been, but it now becomes more of a focus on the sentence, the factors that are expressed in that. In order to adequately address those factors the Court has concluded that a sentence of 293 months is required.

> If viewed from a standpoint of a departure under the guidelines, referring to the guideline provisions, the departure is justified by U.S.S.G. 4A1.3(a)(1). There's reliable information that indicates that the defendant's criminal history category substantially under-represents the seriousness of his criminal history and the likelihood that he will commit other crimes. Consequently, an upward departure is warranted.
> * * *

> [T]he Court concludes that his criminal history category of five does not adequately represent the seriousness of his criminal history or the likelihood that he will commit future crimes.

> Pursuant to that section of the guidelines, if the case law applicable before the recent Supreme Court decisions were to be considered, the Court would determine

12

court's error in calculating the applicable advisory Guidelines offense level did not affect the district court's selection of the 293-month sentence. The district court reached this sentence by applying a criminal history category six rather than a criminal history category five to the improperly calculated sentencing range, and the improperly calculated sentencing range thus served as a reference point for the upward departure. Accordingly, the sentence must be vacated.

*****

For the foregoing reasons, we AFFIRM Davis's conviction, VACATE Davis's sentence, and REMAND this case to the district court for resentencing.

---

the extent of the departure by using as a reference the criminal history category applicable to the defendants whose criminal history or likelihood to recidivate most closely resembles that of the defendant. If the Court were to make such a determination, the Court would find that the defendant's criminal history category most closely resembles that of a criminal history category six and, therefore, for purposes of upward departure the Court looks at a range of 235 to 293 months and is imposing a sentence at the top of that range.