**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

DEC 14 2011

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 10-50097 |
| Plaintiff - Appellee, | D.C. No. 2:07-cr-01079-DSF-34 |
| v. | |
| DANIEL MARTIN MACIEL, Jr., AKA Pony, AKA Seal HH, | MEMORANDUM[*] |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 10-50098 |
| Plaintiff - Appellee, | D.C. No. 2:07-cr-01079-DSF-16 |
| v. | |
| CARLOS RODRIGUEZ, AKA Face, AKA Seal P, | |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 10-50100 |
| Plaintiff - Appellee, | D.C. No. 2:07-cr-01079-DSF-14 |

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

v.

VICTOR HERRERA, AKA German,
AKA Seal N,

        Defendant - Appellant.

Appeal from the United States District Court
for the Central District of California
Dale S. Fischer, District Judge, Presiding

Argued and Submitted November 8, 2011
Pasadena, California

Before: SCHROEDER, REINHARDT, and MURGUIA, Circuit Judges.

Appellants Carlos Rodriguez, Daniel Martin Maciel, Jr., and Victor Herrera each appeal their respective convictions for conspiracy to possess with intent to distribute at least 500 grams of a mixture or substance containing a detectable amount of methamphetamine, or at least 50 grams of actual methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(viii).  Because the history and facts of these cases are familiar to the Parties, we need not fully recount them here.  We note only that the Government arrested and charged each Defendant as a result of a three-year investigation into the Los Angles-based Florencia 13 ("F13") street gang's drug trafficking and racketeering activities. The evidence against the Appellants consisted almost entirely of intercepted phone calls on which they can

each be heard speaking with three mid-level F13 drug dealers: Alberto Hernandez, Jesse Vasquez, and Arturo Cruz.

## I.	Sufficiency of the Evidence Claims

In evaluating a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the prosecution, and must affirm the jury's verdict so long as any rational trier of fact could conclude that the elements of the crime have been proven beyond a reasonable doubt.  *United States v. Nevils*, 598 F.3d 1158, 1163–64 (9th Cir. 2010) (en banc) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

### A.	Herrera and Maciel's Conspiracy Conviction Claims

We find that the Government proved the existence of the broad drug distribution conspiracy charged in the indictment.  Accordingly, the definitive issue before us is whether sufficient evidence connects these Defendants, even slightly, to that conspiracy.  *United States  v. Corona-Verbera*, 509 F.3d 1105, 1117 (9th Cir. 2007).

#### 1.	Sufficient evidence supports Herrera's conspiracy conviction

In arguing that his conviction should be reversed, Herrera relies primarily on *United States v. Lennick*, which held that "proof . . . a defendant sold drugs to other

3

individuals," even in large quantities, "does not prove the *existence* of a

conspiracy." 18 F.3d 814, 819 (9th Cir. 1994) (emphasis added).  Herrera's

reliance on *Lennick* is misplaced because the existence of the conspiracy is not at

issue, but rather his connection to it.  Moreover, this case is distinguishable, as the

evidence shows that Herrera had more than a buyer-seller relationship with

Vasquez.  Herrera acted as a facilitator who, at Vasquez's request, sought out

wholesale suppliers of methamphetamine and, after finding one, agreed to set up a

deal whereby Vasquez could purchase at least a pound of the drug.[1]  He also

proposed going into business with Vasquez, suggesting they jointly invest in ten

pounds of methamphetamine and sell it after the price had risen.  In so doing,

Herrera clearly participated in and furthered the objects of the drug distribution

conspiracy.  *See United States v. Antonakeas*, 255 F.3d 714, 723–24 (9th Cir.

2001).

That Herrera participated knowingly is evidenced by the large quantity of

drugs discussed, which alone is sufficient to prove Herrera's knowledge of the

---

[1]We reject Herrera's argument that there was insufficient evidence to prove
he and Vasquez were discussing methamphetamine.  Although Herrera's drug
expert testified to the contrary, the jury was entitled to accept the Government
expert's competing and well-reasoned conclusion that the drug in question was
methamphetamine.  *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 95
F.3d 1422, 1431 (9th Cir. 1996).

broader conspiracy. Furthermore, the intercepted calls evidence a familiarity between Herrera and Vasquez that, when coupled with the quantity of drugs discussed and the investment proposal, supports an inference that Herrera was aware of Vasquez's status as a prolific drug dealer. This knowledge, along with Vasquez's mention to Herrera of other co-conspirators, is sufficient to support a finding that Herrera knowingly involved himself with the drug conspiracy of which Vasquez was a part. *See United States v. Kearney*, 560 F.2d 1358, 1362 (9th Cir. 1977).

### 2. Sufficient evidence supports Maciel's conspiracy conviction

As an initial matter, there was sufficient evidence to prove that Maciel was the person referred to as "Pony" on the intercepted phone calls introduced against him. Maciel admitted going by Pony, the phone used by Pony was registered to Maciel at his home address, and the jury considered a voice exemplar. *See United States v. Scully*, 546 F.2d 255, 270 (9th Cir. 1976) *vacated on other grounds by United States v. Cabral*, 430 U.S. 902 (1977).

As for the conspiracy conviction itself, Maciel also improperly relies on *Lennick*; the pertinent issue is not whether a conspiracy existed, but whether the evidence slightly connects Maciel to it. Turning to that question, the evidence shows that Maciel took numerous actions that furthered the objectives of the

conspiracy. At Vasquez's behest, Maciel checked with a drug supplier concerning the price of methamphetamine and then agreed to facilitate a purchase on Vasquez's behalf. He also offered to put Vasquez in touch with a supplier of crack cocaine. Like with Herrera, the quantity of methamphetamine involved supports a finding that Maciel had reason to know of his involvement with a conspiracy. Furthermore, the evidence shows that Maciel also knew that Vasquez was not working alone, as Vasquez made reference to another drug supplier and Maciel was attempting to connect Vasquez with a crack-cocaine dealer he knew. When viewed in tandem with the quantities of narcotics discussed, this evidence supports an inference that Maciel knew of the broader conspiracy and that his actions furthered its objectives. *See Kearney*, 560 F.2d at 1362.

B.  **Drug Quantity Determinations**

In a drug conspiracy, "a conspirator is to be judged on the quantity of drugs that he reasonably foresaw or which fell within the scope of his particular agreement with the conspirator." *United States v. Reed*, 575 F.3d 900, 925 (9th Cir. 2009). "The scope of the jointly undertaken activity is not necessarily the same as the scope of the entire conspiracy." *United States v. Riley*, 335 F.3d 919, 928 (9th Cir. 2003) (internal quotation marks omitted).

6

## 1. The jury's drug quantity finding as to Rodriguez is not supported by sufficient evidence

The jury held that Rodriguez's participation in the conspiracy involved at least 50 grams of pure methamphetamine or 500 grams of a mixture or substance containing a detectable amount of methamphetamine ("50/500").[2] Viewing the evidence in the light most favorable to the Government, we find that this verdict is not supported by sufficient evidence. Rodriguez agreed to purchase quarter- and half-ounce quantities of methamphetamine on seven different occasions and was rebuffed in his attempts to purchase unspecified amounts of methamphetamine on six others.[3] The quantity of drugs, therefore, that fell within the scope of Rodriguez's agreement falls short of the 500-gram mixed-methamphetamine threshold, and we can devise no method of extrapolation that the jury may have reasonably utilized to reach that amount. *See United States v. Scheele*, 231 F.3d 492, 498 (9th Cir. 2000) (approving estimation but urging caution in its use). Furthermore, because Rodriguez did not stipulate to the purity of the

---

[2]The amount of "actual" or "pure" methamphetamine in a methamphetamine mixture is calculated as the percentage of the methamphetamine mixture that is pure. *United States v. Lopes-Montes*, 165 F.3d 730, 731 (9th Cir. 1999). For example, "[A] mixture weighing 10 grams containing [methamphetamine] at 50% purity contains 5 grams of [methamphetamine] (actual [or pure])." *Id.* (citing U.S.S.G. § 2D1.1(c) n.B).

[3]An ounce weighs approximately 28.35 grams.

methamphetamine found at Vasquez, Cruz, and Hernandez's stash houses, the jury lacked comparator evidence from which it could estimate the purity of the methamphetamine that Rodriguez agreed to purchase and distribute. *Cf. Lopes-Montes*, 165 F.3d at 732 (approving estimation of drug purity based on purity of seized drugs). Consequently, there was insufficient evidence for the jury to conclude that the scope of Rodriguez's agreement exceeded the 50-gram pure-methamphetamine threshold.

Additionally, a defendant is only liable for the conduct of another if that conduct "was reasonably foreseeable and furthered jointly undertaken criminal activity." *United States v. Ortiz,* 362 F.3d 1274, 1278 (9th Cir. 2004). The evidence shows that the scope of Rodriguez's agreements with co-conspirators Vasquez, Cruz, and Hernandez extended only to street-level distribution of methamphetamine. Accordingly, the methamphetamine found at their stash houses was not reasonably foreseeable to Rodriguez in connection with that jointly undertaken criminal activity. *See* U.S.S.G. § 1B1.3.cmt. n.2(c)(7). In other words, because Rodriguez agreed only to distribute methamphetamine for Vasquez, Cruz, and Hernandez, he is not responsible for their supplies of the drug.

Accordingly, we hold that there is insufficient evidence to support the jury's finding that Rodriguez's conspiracy involved at least 50 grams of pure

8

methamphetamine or 500 grams of a mixture or substance containing a detectable amount of methamphetamine. We therefore reverse and remand for resentencing in accordance with this holding.

### 2. The jury's drug quantity finding as to Herrera is supported by sufficient evidence

The evidence shows that Herrera agreed to supply Vasquez with at least a pound of methamphetamine, which weighs approximately 453 grams. Assuming the purity of this methamphetamine was commensurate with the lowest purity methamphetamine seized from Vasquez's stash house—12 percent pure— the 50-gram threshold is satisfied, as it would yield 54.36 grams of pure methamphetamine. *See Lopes-Montes*, 165 F.3d at 732. Alternatively, the 500 gram threshold is exceeded by adding the amount of methamphetamine found at Vasquez's stash houses—184.3 grams—to the 453 grams to which Herrera agreed. The stash house methamphetamine was reasonably foreseeable to Herrera because the jointly undertaken criminal activity he engaged in with Vasquez encompassed supplying Vasquez with drugs for further distribution. *See United States v. Flores Rosales*, 516 F.3d 749, 755 (9th Cir. 2008).

### 3. The jury's drug quantity finding as to Maciel is supported by sufficient evidence

9

We also find that the jury's 50/500 drug quantity finding as to Maciel is supported by sufficient evidence. Viewing the evidence in the light most favorable to the Government, Maciel agreed to facilitate the purchase of a pound of methamphetamine. As in Herrera's case, even if the jury assumed that this methamphetamine was only 12 percent pure, that still yields 54.36 grams of pure methamphetamine. *See Lopes-Montes*, 165 F.3d at 732. Furthermore, for the same reasons as with Herrera, the methamphetamine found at Vasquez's stash houses is attributable to Maciel under a foreseeablity theory, and the 500 gram threshold is exceeded when the stash house methamphetamine is added to the 453 grams whose purchase Maciel agreed to facilitate. *See Flores Rosales*, 516 F.3d at 755.

## II. Non-Sufficiency-of-the-Evidence Claims

### A. Rodriguez

#### 1. The district court did not err in denying Rodriguez's motion to dismiss the 21 U.S.C. § 851 information

Rodriguez argues that the Government engaged in vindictive prosecution by filing a 21 U.S.C. § 851 information only after he elected to exercise his constitutional right to a trial. We reject this claim. During plea negotiations, the prosecutor made veiled threats of filing an § 851 information, and Rodriguez was

aware of this possibility. A prosecutor's decision to follow through on a plea-negotiation threat to file additional charges does not raise a presumption of vindictive prosecution. *United States v. Noushfar*, 78 F.3d 1442, 1446 (9th Cir. 1996). Furthermore, because Rodriguez was aware of the threat, "[t]his is not a situation, therefore, where the prosecutor *without notice* brought an additional and more serious charge after plea negotiations relating only to the original indictment had ended with the defendant's insistence on pleading not guilty." *Bordenkircher v. Hayes*, 434 U.S. 357, 360 (1978) (emphasis added).

### 2. The district court did not plainly err by failing to give Rodriguez a personal-use instruction

Rodriguez argues that the district court erred by failing to instruct the jury that, in calculating the quantity of drugs for which Rodriguez was responsible, it could deduct the amount it found Rodriguez agreed to purchase for personal use. Because Rodriguez did not request this instruction at trial, we review the district court's alleged failure to give the instruction for plain error, and we find none. *United States v. Bear*, 439 F.3d 565, 568 (9th Cir. 2006). We have held that a personal-use deduction is permitted for a possession with intent to distribute charge. *United States v. Rodriguez-Sanchez*, 23 F.3d 1488, 1496 (9th Cir. 1994) *overruled on other grounds by United States v. Montero-Camargo*, 208 F.3d 1122,

11

1331–32 (9th Cir. 2000). We have never recognized that this would be appropriate in the conspiracy context. Most other circuits that have considered the issue have held that a personal-use deduction is unwarranted, *see, e.g.*, *United States v. Iglesias*, 535 F.3d 150, 160 (3d Cir. 2008), including some which have approved a version of the *Rodriguez-Sanchez* rule. *See, e.g.*, *United States v. Wyss*, 147 F.3d 631, 632 (7th Cir. 1998). Given the absence of controlling authority on this issue, the lack of an inherent conflict with *Rodriguez-Sanchez*, and the law in the other circuits, it was not plain error for the district court to forego a personal-use instruction. *See United States v. De La Fuente*, 353 F.3d 766, 769 (9th Cir. 2003).

### 3.      The district court did not err in applying a recidivist penalty to Rodriguez during sentencing

Under 21 U.S.C. § 841(b)(1)(A), a prior drug conviction qualifies a defendant for a recidivist penalty so long as the prior conviction became final before the defendant committed the instant offense. Rodriguez argues that the district court improperly imposed a recidivist penalty based on a January 2006 drug conviction because there was insufficient evidence that Rodriguez's participation in the conspiracy continued past December 17, 2005, the date Rodriguez's voice last appeared on an intercepted phone call. Because Rodriguez

12

did not raise this claim below, we review for plain error. *United States v. Ross*, 511 F.3d 1233, 1235 (9th Cir. 2008).

Conspiracy is a "continuing offense," meaning that a defendant's connection with a conspiracy "is presumed to continue until there is affirmative evidence of abandonment, withdrawal, disavowal or defeat of the object of the conspiracy." *United States v. Castro*, 972 F.2d 1107, 1112 (9th Cir. 1992) *overruled on other grounds in United States v. Jimenez Recio*, 537 U.S. 270 (2003). There is nothing in the record demonstrating Rodriguez's affirmative withdrawal from the conspiracy, which the indictment alleges extended until September 2007. Accordingly, the district court did not plainly err in using Rodriguez's January 2006 conviction to enhance his sentence.

## B.  The sentence imposed on Herrera by the district court is not substantively unreasonable

Herrera argues that the 286-month sentence imposed by the district court is substantively unreasonable. Contrary to Herrera's arguments, under *Kimbrough v. United States*, 552 U.S. 85 (2007), the district court was not required to mitigate the harshness of the career offender provisions because they are not based on empirical research. *Id.* at 109. Additionally, this case is easily distinguishable from *United States v. Amezcua-Vasquez,* 567 F.3d 1050 (9th Cir. 2009), as the

13

district court considered the Herrera-specific facts warranting a departure, explaining that it considered his "positive traits" and had been persuaded somewhat by the arguments made in his briefs. *See id.* at 1056. This consideration is reflected in the district court's 76-month departure below the Guideline minimum. The district court, therefore, did not abuse its discretion in sentencing Herrera. *See Gall v. United States*, 552 U.S. 38, 51 (2007).

### C. The district court did not err in dismissing Maciel's motion to suppress the wiretap authorized for Target Telephone #10

The determinative question in our review of a district court's denial of a motion to suppress evidence obtained from a wiretap is whether, looking at the four-corners of the wiretap affidavit, there was a substantial basis to support the issuing judge's probable cause determination. *United States v. Meling*, 47 F.3d 1546, 1552 (9th Cir. 1995). Here, the affidavit detailed a wide-ranging drug operation and pointed to specific facts suggesting that the owner of Target Telephone #10, Marisol Garcia, was involved. Intercepts from a wiretap of Cruz's phone showed that Garcia discussed narcotics proceeds and used coded language with Cruz on one, if not two, occasions, and the affiant found that these calls evidenced Garcia's involvement in her husband Vasquez's drug dealing operation. *See United States v. Michaelian*, 803 F.2d 1042, 1045 (9th Cir. 1986). Toll

14

records also showed that Target Telephone #10 had received phone calls from other persons with suspected connections to the F13 gang's drug trade. Finally, the facts in the affidavit were not stale. *United States v. Leasure*, 319 F.3d 1092, 1099 (9th Cir. 2003). Accordingly, we find the district judge had a substantial basis for his probable cause determination. *Meling*, 47 F.3d at 1552.

**The jury's drug-quantity finding as to Rodriguez is reversed and the case is remanded for resentencing in light of this opinion. All other claims are affirmed.**

15